GEORGE E. PALENCIA *et al.*, Indiv. and as Minority Directors of Bikol U S A Inc., Plaintiffs-Appellants, v. EDEN L. NAVARRO *et al.*, Defendants-Appellees.

First District (5th Division) No. 1—90—3422

Opinion filed February 19, 1993.—Rehearing denied March 24, 1993.

Roberto R. Ruelo, of Tampa, Florida, for appellants.

Robert S. Levy, of Robert S. Levy & Associates, of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

George E. Palencia, Roberto R. Ruelo and Larry C. Pena, individually and as a minority of the board of directors of Bikol U S A Inc. (Bikol), a not-for-profit corporation, appeal from a trial court's order dismissing with prejudice a second-amended five-count complaint seeking an accounting and other relief from Eden L. Navarro and over 20 others of Bikol and Bikol itself. For brevity's sake, we will refer to the plaintiffs as the minority and the defendants as the majority.

Bikol is an Illinois not-for-profit corporation with a registered office in Chicago, Illinois. A 1988 list of members indicates that Bikol has approximately 1,800 members. Bikol is a charitable organi-

zation under section 501(c)(3) of the Internal Revenue Code (26 U.S.C. §501(c)(3) (1988). Its primary charitable activity is to pay the education expenses of deserving high school and college students in the Philippines. Most, if not all, of the members have an ancestral tie to the Bikol region of the Philippine Islands.[1] The members are entitled to vote.

The private laws that regulate, govern or control the actions, affairs and concerns of the corporation are its bylaws. Bikol's bylaws were duly adopted at a meeting of the members on December 28, 1985.

At the filing of this action in 1988, the balance in the scholarship fund was approximately $16,984. Only the interest earned from the scholarship fund was authorized to be spent for the scholarship program. The principal of the scholarship fund could not be invaded or used. The scholarship fund is a trust fund. Article VIII, section 3(b), of the bylaws provides that the principal and interest of the scholarship fund shall be used exclusively for the scholarship program:

"To the extent allowed by law, the funds of the corporation heretofore segregated and deposited in the banks for use of its scholars, including all interest earned therefrom, shall continue to be exclusively used for said purpose, and said funds may be augmented but not diminished."

The bylaws provide that the term of office of both the directors and officers of the corporation shall be one year beginning in January.

Article XII, section 1, of the bylaws provides:

"*Amendments.* The Board of Directors shall propose amendments to the Articles of Incorporation or the Bylaws of the corporation and submit them to a vote at the annual or special meeting of the members. A written notice, setting forth the proposed amendment or a summary of the changes to be affected thereby, shall be given to the members in accordance with the statute. The proposed amendment to the Articles of Incorporation is adopted if it receives a two-thirds vote of the members present, there being a quorum. The proposed amendment to the Bylaws is adopted if it receives a

---

[1]Bikol is defined as a Christianized people residing in southeastern Luzon and adjacent islands of the Philippines. Webster Third New International Dictionary 215 (1986).

majority vote of the members present, there being a quorum."

The plaintiffs and minority directors of Bikol brought this action individually and derivatively on behalf, in the rights, and for the direct benefit of Bikol. The action was brought against the defendants individually and as majority directors of Bikol.

On April 29, 1988, defendant Navarro called a special meeting of Bikol to vote on the ratification of five proposed amendments to the bylaws. One proposed amendment would allow expenditures, not only of the interest from the scholarship fund, but would also allow expenditures of the principal for any corporate purpose. Another proposed amendment would extend the term of office of incumbent directors and officers from one year to two years.

No written notice of the special meeting was sent to the members in accordance with the bylaws. Only 69 members attended the meeting. Plaintiff Ruelo and two other members called attention to the lack of quorum. A voting resulted in four of the five proposed amendments getting more "yes" than "no" votes. Defendant Navarro proclaimed the four amendments approved. The two above-mentioned amendments were among those approved. Subsequently, plaintiff Palencia filed a demand for arbitration pursuant to the bylaws. This request was denied.

On June 13, 1988, plaintiff George Palencia filed a four-count complaint against defendant Eden L. Navarro, president of Bikol, and Angel Villaluz, Jr., treasurer of Bikol. The complaint sought: (1) arbitration; (2) a declaration of rights; (3) an injunction; and (4) an accounting. This action was based on an attempted amendment to the bylaws of Bikol to allow the invasion of the principal of the scholarship fund for any corporate purpose and an amendment to the bylaws extending the terms of office of the directors and officers to two years.

On July 9, 1988, defendant Navarro and majority directors of the board reversed their previous decision to convene an arbitration panel. In the first meeting of the convened arbitration panel, defendants Navarro and Villaluz filed with the arbitration panel a document entitled, "Submission to Arbitration," in which the two defendants stated that they were submitting the case for arbitration "under the VOLUNTARY LABOR ARBITRATION RULES of the American Arbitration Association and the By-Laws of the Bikol-U.S.A., Inc. Arbitration."

Defendants Navarro and Villaluz also filed with the arbitration panel a document entitled, "Demend [sic] for Arbitration," which

allegedly was an altered version of plaintiff Palencia's demand for arbitration. A majority of the board of Bikol decided to convene an arbitration panel. Plaintiff Palencia withdrew his demand for arbitration based on a charge of forgery.

On June 23, 1988, Palencia filed a motion for preliminary injunction to enjoin defendants Navarro and Villaluz and their agents from implementing amendments 2, 3, 4 and 5 to the bylaws allegedly ratified on April 29, 1988. The motion further sought to prohibit the defendants and their agents from redeeming, withdrawing, spending, or otherwise encumbering the principal of the scholarship fund.

On June 29, 1988, the trial court denied plaintiff's motion for temporary restraining order finding, "relative to the relief sought that plaintiff has brought this action against the wrong parties and that plaintiff should seek this relief as against the board of directors of the subject corporation, it it *[sic]* all."

On August 30, 1988, Palencia, joined by Roberto R. Ruelo, Roman P. Badiola, Senen F. Barron and Larry C. Pena, filed an amended complaint against Bikol, the majority members of the board of directors of Bikol, and the committee of presidential advisers of Bikol. The complaint alleged the following causes of action: (1) an accounting (count I); (2) an injunction (count II); (3) breach of contract (count III); (4) a declaration of rights (count IV); (5) damages (count V); and (6) a declaration of rights (count VI).

On September 28, 1988, the plaintiffs were granted leave to file *instanter* a second-amended complaint. The purpose of filing the second-amended complaint was to drop Roman P. Badiola and Senen F. Barron as plaintiffs. The allegations of the second-amended complaint mirrored those of the amended complaint.

On October 5, 1988, plaintiffs filed an emergency motion for a temporary restraining order. Plaintiffs sought to restrain and enjoin the defendants from doing or taking or causing to be done or taken any action to implement or enforce the amendments to the bylaws, which purportedly were ratified at the April 29, 1988, special meeting; to restrain and enjoin Jose Trinidad from acting as chairman of the committee on elections (Comelec) of Bikol; to restrain and enjoin defendants from appointing or recognizing a Comelec chairman other than plaintiff Ruelo; ordering the defendants to reinstate and to recognize plaintiff Ruelo as legal advisor, Comelec chairman and director of Bikol; all until further order of the court. The trial court ordered "a temporary restraining order issue restraining defendants from conducting the registration and election of the corpora-

tion until further order of court, without bond." Defendants were given leave to file a motion in lieu of an answer.

On October 25, 1988, defendant filed a motion to dismiss the second-amended complaint in lieu of an answer. On November 1, 1988, plaintiffs filed their response to the motion to dismiss. At the hearing, defendants moved to amend the motion so as to make any reference therein to the "first-amended complaint" as a reference to the "second-amended complaint." The motion was granted. On November 16, 1988, the trial court reserved its ruling on the motion to dismiss and set the matter for a pretrial.

On December 28, 1988, the trial court entered an order containing the following: (1) Dominic Fichera was appointed as the court's monitor; (2) within 90 days, under the direction and supervision of the court's monitor, Bikol shall hold and conduct an election for all officer positions of the corporation; (3) the monitor shall approve all slates of candidates running and certify all those entitled to vote in the election as well as setting the time and date of the election and shall control and supervise the noticing of the election, the balloting process, the vote counting, and the noticing and certification of those who are thus elected; (4) a direction that $5,000 be taken out of the scholarship fund to pay for the monitor fees and election costs; (5) the parties shall review all scholarship payment requests and to the extent there is a disagreement thereon shall petition the court, otherwise such payments shall be paid from the scholarship fund; (6) Bikol shall within 30 days provide plaintiffs with a current financial report of the funds of the corporation; and (7) the court suspended the bylaws to the extent that the order and the actions and decisions of the court's monitor are contrary to Bikol's bylaws.

On March 7, 1989, the court granted an order for additional monitors. On April 10, 1989, the monitors filed the results of the election which the trial court subsequently adopted and certified. The court further ordered that the officers and board members elected shall take their elected offices immediately and shall hold office for one year starting from the date of the order. The court ordered:

> "That the newly elected officers and board members [*sic*] shall submit to the Court within 45 days a revised set of bylaws for the defendant corporation which said newly elected officers and board members shall write without interference of any kind from the parties excepting that the parties shall within 10 days submit in writing to the said newly elected officers and board members in writing their respective sugges-

tions for the revision or non-revision of said by-laws. The plaintiffs shall submit one consolidated writing through its attorney Mr. Yee and the defendants shall do likewise through their counsel, Mr. Levy for those purposes. To the extent that any party hereto is also a newly elected corporate official, their participation in the revision of the by-laws shall not constitute interference. The newly elected president Emmanuel Masangcay shall receive the consolidated recommendations from Mr. Yee and Mr. Levy. The parties shall likewise exchange their suggestions."

The court held that upon receipt of the revised bylaws the court shall enter its order adopting, in whole or in part, or revising said bylaws and the parties shall be free to submit written objections to the revised bylaws. Finally, the court held that the plaintiffs shall be free to make an appointment to Xerox the books, records and journals of Bikol for the period of 1985 to the present.

On April 21, 1989, the court granted monitor fees, attorney fees and election expenses totaling $6,361.34. The court ordered that the remaining balance be paid by Bikol to the monitor.

On September 11, 1989, defendants filed their proposed bylaws. On October 2, 1989, plaintiffs filed objections to defendants' proposed bylaws. On October 19, 1989, the trial court held a hearing and issued an order finding the bylaws of Bikol inappropriate and not suitable for the corporation, its purpose, and not in the best interest of its members. The plaintiffs were given seven days to submit their own proposed written bylaws. On October 26, 1989, the plaintiffs filed their proposed bylaws, and on November 13, 1989, the plaintiffs filed detailed objections to the defendants' proposed bylaws. On January 26, 1990, the trial court ordered the parties to submit a written stipulation of their disagreement on the proposed revised bylaws as well as a marked copy of the bylaws demonstrating those points which had been resolved. On May 10, 1990, plaintiffs filed their memorandum on the proposed bylaws pointing out the portions of the proposed revised bylaws on which the parties could not agree.

On June 1, 1990, the trial court ruled on the provisions of the proposed bylaws over which the parties could not agree. The trial court issued an order adopting the proposed bylaws containing provisions agreed to by the parties and ruled upon by the trial court. In the same order the trial court ordered defendants to submit the adopted bylaws for ratification by the members of Bikol.

On June 4, 1990, plaintiffs filed bylaws incorporating the trial court's rulings and the parties' agreements to be submitted to the Bikol members for ratification. A number of the bylaws which the trial court ruled on the parties could not agree upon. On July 21, 1990, the trial court entered an agreed order allowing defendants to file defendants' report on the bylaws ratification. Plaintiffs submit that at the time of the preparation of the record on appeal, plaintiffs' counsel also found in the record a document entitled "Filing" of the bylaws ratification results, purportedly filed by defendants on August 21, 1990, but plaintiffs' counsel maintain they were never furnished with a copy. Plaintiffs alleged that neither filing contained a copy of the bylaws which defendants actually submitted to the members of the Bikol for ratification.

On September 26, 1990, plaintiffs filed their comments to defendants' bylaws' ratification report. Plaintiffs attached to their comments as exhibit 1 a copy of the bylaws which defendants actually submitted to the Bikol members for ratification. Plaintiffs allege that there were differences between the provisions of the bylaws adopted by the trial court on June 1, 1990, and the bylaws defendants actually submitted to the members of Bikol for ratification.

On October 4, 1990, the trial court ordered the majority to file their response to the minority's objections to the bylaw ratification and set the matter for hearing on November 2, 1990.

On November 16, 1990, plaintiffs' counsel stated to the trial court that plaintiffs were objecting to defendants' bylaw ratification report because the bylaws submitted to the Bikol members were not the bylaws adopted by the court. Defendants' counsel denied that the trial court adopted any bylaws. At this time the trial judge was advised that the plaintiffs or minority board members did not run a slate of candidates at the court-ordered election. Apparently out of frustration, the trial judge entered the following order:

> "This cause coming to be heard on the court's order and defendants' motion to dismiss which was properly made with notice given, the court having heard argument
>
> It is hereby ordered:
>
> 1. That the cause is dismissed with prejudice.
>
> 2. There is no just reason to delay appeal."

A notice of appeal was filed on November 29, 1990. Plaintiffs appeal from the following four orders of the trial court: (1) the portion of the December 28, 1988, order appointing a court monitor and ordering that the election costs and fees be paid out of scholar-

ship funds; (2) the October 19, 1989, order finding defendant Bikol's bylaws to be inappropriate and not suitable to the corporation, its purposes and not in the best interest of the corporate members; (3) the portion of August 21, 1990, order allowing the defendants' bylaws' ratification report to be filed with the court only at the time of the hearing and directing the plaintiffs to just make copies therefrom; and (4) the November 2, 1990, order dismissing plaintiffs' cause with prejudice based on defendants' motion to dismiss under sections 2—615 and 2—619 of the Illinois Code of Civil Procedure. See Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619.

On appeal plaintiffs present the following issues for review and seek to have the orders of the trial court appealed from and dismissing plaintiffs' complaint reversed:

I. Whether the trial court erred in suspending or nullifying Bikol's corporate bylaws.

II. Whether the trial court erred in allowing defendants to file their bylaws ratification report without compliance with Supreme Court Rule 104(b). 134 Ill. 2d R. 104(b).

III. Whether the trial court erred in dismissing the complaint.

IV. Whether the trial court erred in dismissing the complaint because it, in effect, approved bylaws which were not duly ratified and which contained provisions contrary to the trial court's ruling and the parties' agreement.

For the following reasons, we must dismiss the appeal for want of prosecution.

The plaintiffs and defendants filed briefs which did not request oral argument. On April 9, 1992, this court granted an order to dispense with oral argument and decide the case on the briefs alone. However, the briefs did not address several questions the court has concerning the appeal. One question was why the Attorney General of the State of Illinois was not made a party to this case.[2] See *In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 387-88, 359 N.E.2d 109; *People ex rel. Scott v. George F. Harding Museum* (1978), 58 Ill. App. 3d 408, 374 N.E.2d 756.

Although the court had previously granted the motion to dispense with oral argument, after additional research as to the issues in the case, the court felt the case required oral argument on the above-mentioned and other issues in order to properly decide the

---

[2]The Charitable Trust Act (Ill. Rev. Stat. 1973, ch. 14, par. 51 *et seq.*) vests the Attorney General with the authority to enforce and supervise a charitable trust.

merits of the appeal. The court set the matter for oral argument twice. On the first date the defendants' lawyer requested a continuance. The court denied the motion. However, on a motion to reconsider, the court granted a continuance of the oral argument due to the fact that defense counsel would be out of the country on the date set for argument. On January 6, 1993, plaintiffs-appellants' counsel filed a waiver of oral argument. On January 20 the court entered an order vacating the order of April 9, 1992, dispensing with oral argument, denied the present motion to dispense with oral argument and set the matter for oral argument on February 4, 1993. On January 27, 1993, the court entered an order withdrawing its previous order having inadvertently set the matter for argument on February 4, 1993, and ordered that the matter be set for oral argument on February 2, 1993. On January 28, 1993, the court received the following letter from the plaintiff-appellants' attorney (who is also a plaintiff in the case):

"I received January 27, 1993 a copy of your Order dated January 20, 1993, vacating your Order dated April 9, 1992 dispensing with oral argument, denying the motion to dispense with oral argument, and letting stand the order setting this matter for oral argument on February 4, 1993.

Please be informed that I am no longer in the private practice of law because I am employed on a full-time basis as an Assistant City Attorney of the City of Tampa, Florida.

For this reason, I will not be able to go to Chicago for the oral argument and I am waiving our right thereto. I hope the Court will view my predicament with understanding. Thank you.

Very truly yours.


Roberto Ruelo
Attorney for Plaintiffs-Appellants."

In light of the above and the court's inability to be advised of matters it deems essential to a determination of the issues tendered by plaintiffs' appeal, we dismiss the case for want of prosecution.

Appeal dismissed.

GORDON, P.J., and McNULTY, J., concur.